**AMERICA ONLINE, INC., Plaintiff,**

v.

**IMS et al., Defendants.**

**No. Civ.A. 98–0011–A.**

United States District Court,
E.D. Virginia,
Alexandria Division.

Oct. 29, 1998.

Jon L. Praed, Latham & Watkins, Washington, DC, for Plaintiff.

Joseph A. Melle, Jr., Boulder City, NE, pro se.

## MEMORANDUM OPINION

BRINKEMA, District Judge.

Before the Court is America Online's Motion for Summary Judgment Against Joseph J. Melle, Jr., as to Liability Under Counts I, II, and V and for Damages. The motion involves two claims under 15 U.S.C. § 1125 (1994) ("the Lanham Act") and one claim under the Virginia common law of trespass to chattels.[1] As to these counts, AOL seeks an award of compensatory and punitive damages and attorneys fees and costs.

## BACKGROUND

Plaintiff America Online ("AOL") is an Internet service provider located in the Eastern District of Virginia. Defendant Joseph J. Melle, Jr., ("Melle") is the creator and operator of defendants TSF Marketing and TSF Industries (collectively "TSF"). Melle and TSF had their principal place of business in California during the period relevant to this litigation. AOL alleges that Melle and TSF improperly sent unauthorized bulk e-mail advertisements ("spam") to AOL subscribers. Specifically, AOL alleges that Melle sent over 60 million e-mail messages over the course of 10 months; that he continued to send unauthorized bulk e-mail after he was notified in writing by AOL to cease and desist these activities; that his activities caused AOL to spend technical resources and staff time to "defend" its computer system and its membership against this spam; and that Melle's messages damaged AOL's goodwill among its members and generated more than 50,000 member complaints.

AOL sued six defendants under five causes of action: false designation of origin under the Lanham Act (Count I); dilution of interest in trademarks and service marks under the Lanham Act (Count II); violation of the Computer Fraud and Abuse Act (Count III); violation of the Virginia Computer Crimes Act (Count IV); and trespass to chattels under Virginia Common Law (Count V). Of the six defendants, only Melle filed an answer to the complaint, and the Court found the remaining defendants to be in default. After entry of those defaults, Melle stipulated to a permanent injunction against him. AOL filed its summary judgment motion on September 2, 1998, and agreed to dismiss the remaining counts of the complaint against Melle, if summary judgment were granted in its favor. Melle filed his opposition on September 10, 1998.

## SUMMARY JUDGMENT

Summary judgment is proper where there is no genuine dispute as to a material fact, and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Allstate Fin. Corp. v. Financorp, Inc.*, 934 F.2d 55, 58 (4th Cir.1991). The Court must draw any inferences in the light most favorable to the non-movant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The standard for granting summary judgment is met if, upon review of all the pleadings,

---

1. On October 1, 1998, this Court entered an Order granting the plaintiff's motion for summary judgment as to liability under Counts I, II, and V of the complaint, stating that a memorandum opinion explaining the reasons would follow.

depositions, affidavits and other documents submitted by the parties, the court finds that the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Having viewed all of the pleadings, depositions, affidavits and other documents in the light most favorable to the defendant, we conclude that there is no genuine dispute as to any material facts upon which AOL bases Counts I, II, and V, and that AOL is entitled to summary judgment as a matter of law.

### DISCOUNT V: TRESPASS TO CHATTELS UNDER VIRGINIA COMMON LAW

The undisputed facts establish that Melle committed a trespass to chattels in violation of Virginia Common Law. Although authority under Virginia law respecting an action for trespass to chattels is sparse, case law suggests that trespass to chattels is indeed actionable in Virginia. *See Vines v. Branch,* 244 Va. 185, 190, 418 S.E.2d 890, 894 (1992) ("Where a person has illegally seized the personal property of another and converted it to his own use, the owner may bring an action in *trespass,* trover, detinue, or assumpsit. . . . One who commits a trespass to chattel is liable to its rightful possessor for actual damages suffered by reason of loss of its use.") (emphasis added) (citations omitted)). A trespass to chattels occurs when one party intentionally uses or intermeddles with personal property in rightful possession of another without authorization. *See* RESTATEMENT (SECOND) OF TORTS § 217(b). One who commits a trespass to a chattel is liable to the possessor of the chattel if "the chattel is impaired as to its condition, quality, or value." *Id.* at § 218(b).

Courts have begun to recognize that the unauthorized mailing of unsolicited bulk e-mail may constitute a trespass to chattels under state law. *See CompuServe, Inc. v. Cyber Promotions, Inc.,* 962 F.Supp. 1015 (S.D.Ohio 1997) (finding that bulk e-mailing by the defendants caused "the value of [Compuserve's equipment to be] diminished even though it is not physically damaged by defendant's conduct," *id.* at 1022). The facts of *CompuServe* are nearly identical to the facts of the case at bar. In both cases, the defendants sent unsolicited e-mail advertising to hundreds of thousands of Internet users, many of whom were subscribers of the respective plaintiff's Internet services. Both defendants concealed the origin of their messages by forging header information. Both plaintiffs alleged that processing the bulk e-mail cost them time and money and burdened their equipment. Both plaintiffs contended that they received complaints from subscribers, and both contended that the bulk e-mailers continued to send messages even after they were notified that bulk e-mailing was unauthorized. Indeed, because the *CompuServe* case is so strikingly similar to the current litigation and the trespass law of Virginia is so close to that of Ohio, we will rely on the reasoning of *CompuServe.*[2]

In the instant case, Melle's conduct fully satisfies all the elements of AOL's claim of trespass to chattels. It is undisputed that Melle intentionally caused contact with AOL's computer network by sending bulk e-mail messages; Melle's contact with AOL's computer network was unauthorized; and Melle's contact with AOL's computer network injured AOL's business goodwill and diminished the value of its possessory interest in its computer network. Melle has provided no evidence whatsoever to counter the facts as alleged by AOL. In fact, he admits to contacting intentionally AOL's computer network by sending over 60 million pieces of unsolicited bulk e-mail over a ten-month period. *Melle Depo.* at 51–52, 61. Melle admits that he received a cease-and-desist letter from AOL dated October 15, 1997, and that as a result of the letter, he knew his contact with AOL's computer network was unauthorized, yet he continued spamming. *Melle Depo.* at 107. Finally, Melle offers no evidence to rebut AOL's allegation that its reservoir of goodwill and its possessory interest

---

**2.** We have previously relied on the *CompuServe* reasoning to grant a preliminary injunction in another spamming lawsuit, *America Online, Inc. v. Over the Air Equipment, Inc., and Joe Tajalle,* Civ. No. 97–1547–A (E.D.Va. Filed Sept. 29, 1997).

in its computer network have been diminished by the bulk e-mailing. *Levitt Decl.* ¶¶ 14–17; *Korn Decl.* ¶¶ 21–25; *Price Decl.* ¶ 7. There is, therefore, no factual dispute as to whether Melle committed a trespass to chattels against AOL's computer network. As such, AOL is entitled to summary judgment on Count V.

### COUNT I: FALSE DESIGNATION OF ORIGIN UNDER THE LANHAM ACT

▮▮▮ The undisputed facts indicate that Melle falsely designated the origin of his products in violation of the Lanham Act. The Lanham Act is designed to make actionable the misleading use of marks in interstate commerce and to protect those engaged in interstate commerce against unfair competition. *See Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 767–68, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992). The Act "provides national protection of trademarks in order to secure to the owner of the mark the goodwill of his business and to protect the ability of consumers to distinguish among competing producers." *Advanced Resources International, Inc. v. Tri–Star Petroleum Co.,* 4 F.3d 327, 333 (4th Cir.1993) (quoting *Park N Fly, Inc. v. Dollar Park and Fly, Inc.,* 469 U.S. 189, 198, 105 S.Ct. 658, 83 L.Ed.2d 582 (1985)). Section 1125(a)(1) makes unlawful the use in interstate commerce of:

> "any false designation of origin ... which ... is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person." 15 U.S.C. § 1125(a)(1)(a) (1994).

The elements of a false-designation violation under the Lanham Act are three-fold: (1) the alleged violator must employ a false designation; (2) the false designation must deceive as to origin, ownership or sponsorship; and (3) the plaintiff must believe that "he or she is or is likely to be damaged by such [an] act." *Id.* § 1125(a)(1).

As for the first element, it is undisputed that many of Melle's messages contained the letters "aol.com" in their headers, thereby creating a false designation. The initials "AOL" have been a registered trademark and service mark of America Online since 1996; AOL has used "AOL" as a trademark and service mark to identify its products in various forms since 1989. Any e-mail recipient could logically conclude that a message containing the initials "aol.com" in the header would originate from AOL's registered Internet domain, which incorporates the registered trade and service mark "AOL." Many of the 60 million messages transmitted by Melle contained the registered trade and service mark "AOL"—in the form of "aol.com"—in the header of the e-mail message. *Levitt Decl.* ¶¶ 25–26.

Second, AOL members were deceived into thinking that AOL sponsored or approved of Melle's bulk e-mailing activities. *Korn Decl.* ¶ 18. Third, Melle's false designation caused damage to AOL. *Korn Decl.* ¶¶ 16, 22–25; *Levitt Decl.* ¶ 26.

▮▮ In his motion opposing summary judgment, Melle failed to dispute any material fact that supports AOL's factual allegations. Instead, he merely claimed that he did not know why his e-mail program, Stealth Mass Mailer, put "aol.com" in the header of his e-mail messages. *Melle's Argument Against America Online's Summary Judgment* at 4–5. However, Melle offered no evidence to support his claimed lack of knowledge. Further, Melle admitted that after he was alerted that the letters "aol.com" were in his headers, he continued to send e-mail with "aol.com" in the message header. *Melle Depo.* 118–119. Therefore, even if we accepted Melle's argument that he did not initially knowingly use "aol.com", there is no doubt that at some point his use became intentional. Moreover, under the Lanham Act, false designation of origin does not have a scienter requirement. *See Ames Publ'g Co. v. Walker–Davis Publications,* 372 F.Supp. 1 (E.D.Pa.1974); *Parkway Baking Co. v. Freihofer Baking Co.,* 255 F.2d 641, 648 (3d Cir.1958) ("[T]here is no requirement that the falsification occur willfully and with intent to deceive.") Thus, Melle's alleged lack of intent does not cure his violation of

federal law, and therefore, AOL is entitled to summary judgment on Count I.

## COUNT II: DILUTION OF TRADE AND SERVICE MARK UNDER THE LANHAM ACT

The undisputed facts indicate that Melle diluted AOL's trademark and service mark in violation of the Lanham Act. Section 1125(c) permits an owner of a mark to obtain relief against another person's commercial use of the mark "if such use begins after the mark has become famous and causes dilution of the distinctive quality of the mark." 15 U.S.C. § 1125(c) (1994). A dilution claim is made out by showing: (1) the ownership of a distinctive mark; and (2) a likelihood of dilution. *See Hormel Foods Corp. v. Jim Henson Productions, Inc.,* 73 F.3d 497, 506 (2d Cir.1996). The "likelihood of dilution" element can be established either by a showing of "blurring" or by a showing of "tarnishment." *Id.*

Both elements of a dilution claim are satisfied in the case at bar. First, AOL clearly owns the distinctive "AOL" mark. *See AOL's Mem.* Exhibit G. The mark is registered with the United States Patent and Trademark Office, and the mark is used and recognized throughout the world in association with AOL's online products and services. *Price Decl.* ¶ 3.

Second, the "AOL" mark was diluted by tarnishment. "The sine qua non of tarnishment is a finding that plaintiff's mark will suffer negative associations through defendant's use." *Hormel Foods Corp.,* 73 F.3d at 507. The "AOL" mark constitutes a valuable business asset for America Online. *Price Decl.* ¶ 3. AOL contends that Melle's conduct has tarnished its mark, and that there is a strong likelihood of dilution by negative associations that AOL subscribers make between AOL and Melle's junk e-mailing practices. *AOL's Mem.* at 25. AOL receives more than 100,000 complaints a day regarding junk e-mail generally and can point to more than 50,000 complaints aimed at Melle's spamming. Melle puts forward no facts to dispute these allegations. Therefore, AOL is entitled to summary judgment on Count II.

## DAMAGES

As to the specific damages, Magistrate Judge T. Rawles Jones has under advisement AOL's *ex parte* proof of damages against the defaulting defendants. Because the evidence against those defendants is related to that against Melle, we will defer ruling on damages until the Report and Recommendation has been issued. Melle will be given an opportunity to object to that Report and Recommendation.

## CONCLUSION

For the foregoing reasons, AOL's Motion for Summary Judgment Against Joseph J. Melle, Jr., as to Liability Under Counts I, II and V, was GRANTED on October 1, 1998.

The Clerk is directed to forward copies of this Memorandum Opinion to Counsel of Record and defendants, *pro se.*